## THE DREDGE NO. 15.

(District Court, E. D. Virginia. February 26, 1920.)

No. 2663.

1. **Master and servant** ⟜103(1), 124(3)—**Master's duty to inspect and keep safe steam boiler defined.**

   The duty of a master to inspect and keep in safe condition a steam boiler about which employés work is a nonassignable and positive one of a continuous character, and a failure to perform it renders him liable for resulting injury to an employé.

2. **Master and servant** ⟜124(3)—**Injury by explosion of improperly inspected boiler actionable.**

   Owner of a dredge *held* liable for injury to a fireman thereon from blowing out of a boiler tube on the ground of negligence in failing to properly inspect and keep the boiler in safe repair.

**3. Master and servant ☞217(2)—Defense of assumption of risk not available.**

A fireman on a dredge *held* not to assume the risk from explosion of the boiler while pointing out its defective condition to a superior as soon as it was discovered.

**4. Damages ☞132(2)—$4,500 not excessive for possibly permanent injury from scalding.**

A fireman 24 years old, who knew no other trade. *held* entitled to $4,500 damages for an injury by scalding on explosion of a boiler, which caused him great pain and had prevented him from working for 15 months and would possibly permanently disable him.

In Admiralty. Suit by Erick Johnsson against Dredge No. 15; the P. Sanford Ross Company, Incorporated, claimant. Decree for libelant.

Wolcott, Wolcott, Lankford & Kear; of Norfolk, Va., for libelant.
Garnett, Taylor & Edwards, of Norfolk, Va., for respondent.

WADDILL, District Judge. The libelant was a fireman on the respondent dredge, engaged in dredging the Albemarle & Chesapeake Canal, in the vicinity of Currituck, and on the 26th of November, 1918, about 4 o'clock p. m., was seriously burned by the blowing out of a tube of the boiler on the dredge.

The libelant, a Swede, 24 years old, had only been at work three or four days, and on the evening in question, upon going on his watch or shift, was told by the fireman leaving the shift that the boiler was leaking. He immediately sought the chief engineer, and advised him of the fact. The chief engineer and libelant at once proceeded to the boiler. The libelant opened the furnace door to point out the leak, which was at once seen to be a serious one, and the explosion almost instantly occurred, blowing the tube out, and seriously scalding libelant.

The case turns upon whether the respondent had exercised the degree of care reasonably required of it, in furnishing and maintaining safe instrumentalities and appliances with which the libelant was to perform the work required of him. The law applicable is well settled, namely, that the employer did not fulfill the duty imposed upon it by merely furnishing a reasonably safe place in which to work, and suitable appliances such as would have been provided by persons of ordinary prudence engaged in like business under similar circumstances and conditions, but owed the further duty to maintain the same, which involved the duty of reasonable inspection, to the end that the boiler would be kept and remain in reasonably safe condition, and for injuries arising from failure in this respect is liable.

The testimony of the libelant is clear as to the defective condition of this boiler, though libelant had no knowledge on the subject, having only very recently commenced work. The details of the testimony need not be discussed, especially as, in the court's view, the respondent's testimony sufficiently establishes libelant's case respecting the defective appliance, and lack of proper and regular inspection of the same, and that this caused the injury to the libelant. The crew of the dredge con-

sisted of the captain, two levermen, chief and two assistant engineers, six firemen, six deck hands, three coal passers, three cooks, making 24 in all. Of this number, the respondent examined only one of the levermen, and the chief engineer, from whose evidence it appeared that the engine and boiler were built and installed in the vessel six years previously, at the time the dredge was rebuilt, after being burned, and that the same had not been since that time in a dry dock for repairs. The chief engineer had only been on the dredge since August preceding the accident, and while in his testimony he said that proper inspection had been had, or was unnecessary because of constant work upon the boiler, he admitted on cross-examination that he knew nothing of any specific inspection having been made, further than that in October, about a month before the accident, he had thoroughly cleaned and overhauled the engine and boiler, and observed nothing wrong about them, and he did not recall as to whether on the Sunday previous to the accident, as claimed by libelant's witnesses, the boiler was gone over or not. This is the only witness that attempts to show that an examination was made of the boiler, and he admits that the tube blown out, and not produced in evidence was defective, as the reason why it was not put back, and a new one used in its place. He also testified that opening the door of the furnace had nothing to do with libelant's being scalded, as he would have been anyhow from the escaping steam and water from the boiler through the tube hole. The other witness, the leverman, testified generally to the fact that he considered everything all right. He had nothing to do with working either the engine or boiler. The master of the dredge was not produced, nor either of the assistant engineers, nor any reasonable explanation made of their absence, or for their failure to call others of the large number of workmen on the dredge. In addition to the leverman and the chief engineer, the respondent examined the superintendent of the P. Sanford Ross Company, Incorporated, the owner of Dredge No. 15, who testified as to his supervision of the work, and visiting the same at frequent intervals, and that he considered the dredge and its machinery in good and safe condition.

[1] The duty of inspection imposed upon the owner was a nonassignable duty, which would not be fulfilled by merely appointing some one for that purpose. It was incumbent upon the respondent to show that it had discharged its duty in this respect, and that the person appointed discharged his duty. The obligation to inspect is a positive one, and of a continuous character, the service to be seasonably rendered, and faithfully performed; and for injuries arising from failure in these respects the respondent is liable. Hough v. Railway Co., 100 U. S. 213, 219, 25 L. Ed. 612; B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914, 37 L. Ed. 772; U. P. Ry. Co. v. Daniels, 152 U. S. 684, 688, 689, 14 Sup. Ct. 756, 38 L. Ed. 597; Texas & P. R. R. Co. v. Barrett, 166 U. S. 617, 619, 17 Sup. Ct. 707, 41 L. Ed. 1136.

[2] What has been said in reference to inspection of machinery and instrumentalities applies to boilers generally, and on a dredge of this character, used on the navigable waters of the United States, they are

subject to inspection under the law, the statute requiring that they shall be annually inspected, and a proper certificate given, and by proper regulations, that there shall be intermediate examinations once every four months. The annual inspection requires a hydrostatic test of the boilers.

[3] The defense of assumed risk is suggested as a reason why the libelant should not recover. Little need be said as to this defense, nor any authority cited to show that, under the facts of this case, it will not avail the respondent. To hold an employé liable under this doctrine for an injury received while pointing out to his superior officer a defect in an appliance as soon as discovered, as a result of which libelant was hurt, would carry the doctrine to an extreme that has no warrant in law.

[4] Considering what would be a proper allowance to the libelant for the injuries sustained by him, the usual embarrassment arises. Just what the amount should be is never free from difficulty. The libelant was horribly burned from his waist up, by steam and hot water escaping from the boiler as a result of the exploded tube. That he saved his eyesight, and, indeed, his life, is almost a miracle. He was taken to the hospital as soon as possible, reached the same in four or five hours, suffering greatly then and thereafter. He was in the hospital eleven weeks, his face covered with bandages eight weeks, and his head, face, hands, chest, and body generally, above his waist, seriously burned. He was a fireman by trade, 24 years old; had never done any other work; was making at the time of the injury $75 per month and board; has not been able to work at his trade since his injury, because of the condition of his hands, and it is uncertain within what time they will become normal, so as to enable him to follow his trade. While libelant's injury is not believed to be necessarily permanent, he has been prevented from following his trade for more than 15 months, and is unable to do heavy work with his hands now, and it is not at all certain when he will be able to do so.

Taking the case in its various aspects, the uncertainty as to the duration of his injuries, the very great suffering to which libelant was subjected, his age and earnings, the court thinks that an award of $4,500 would be reasonable, and the same is accordingly made.

⊛⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes